OCTOBER TERM, 1832.

ELIZA B. WALLACE v. MARY M. WALLACE.

The act entitled "An act relative to the probate of wills," passed March 6th, 1828, (*Harrison*, 195,) has no reference to a will executed in this state, by one who at the execution of the will, and at the time of his death, lived in this state. The act has reference to foreign wills only.

APPEAL from a decree of the surrogate of the county of Middlesex, directing that a copy of the will of Joshua M. Wallace, proved in the state of Pennsylvania, should be filed and recorded, and that letters testamentary should be granted to Mary M. Wallace.

*Southard* and *Hornblower*, for appellant.

*G. Wood*, for respondent.

THE ORDINARY. The following case is presented by the papers sent up and the proofs and admissions of the parties.

In the year eighteen hundred and nineteen, Joshua M. Wallace, having resided many years previously thereto in the county of Burlington, died in that county, leaving a last will and testament, of which he appointed his wife, Tace Wallace, and his brother-in-law, William Bradford, junior, executors. William Bradford, junior, died before the testator, and Tace Wallace re-

[Wallace v. Wallace.]

nounced her right to act as executrix. The testator was possessed of personal estate in the state of Pennsylvania as well as in the state of New-Jersey ; and after the renunciation of Tace Wallace, Joshua M. Wallace, junior, possessing himself of the said instrument, presented it to the register for the probate of wills and granting letters of administration in and for the city and county of Philadelphia ; and having proved the hand-writing of the said testator by the oath of two witnesses, (not subscribing witnesses to the instrument,) administration with the will annexed was granted to the said Joshua M. Wallace, junior, of all and singular the goods, chattels, rights and credits of the deceased. This administrator afterwards died, and thereupon Tace Wallace, the surviving executrix named in the will, appeared before the register in Philadelphia, and took upon herself the burthen of the execution of the will. Tace Wallace having departed this life, Mary M. Wallace, who is the executrix of, and has lawfully proved, her last will and testament, made application, in June, eighteen hundred and thirty-one, to the surrogate of the county of Middlesex, in this state, to have a certified copy of the said will of Joshua M. Wallace, and of the probate thereof, filed and recorded in this office, according to the provisions of the act entitled "An act relative to the probate of wills," passed March sixth, eighteen hundred and twenty-eight. The surrogate gave notice according to the request ; and after hearing the parties, he did, on the thirty-first of October, eighteen hundred and thirty-one, order and decree that the copy of the will of the said Joshua M. Wallace should be filed and recorded, and that letters testamentary thereon should be granted to the said Mary M. Wallace, the applicant. From this decree of the surrogate an appeal has been taken, and the question whether such decree was rightfully made, is now before this court.

A variety of objections have been taken to the proceedings before the surrogate. It is insisted, that as the testator lived and died in the county of Burlington, the proceedings should have been had in that county, and not in Middlesex ; and also, that the decree made by the surrogate is not in conformity with the

78

notice, but embraces matters not contained in it; and further, that the question of the validity of this will is now pending in the court of chancery of this state, and pending that suit the will should not have been admitted to probate. These are all matters of sufficient importance to deserve inquiry at the hands of this court. But a graver question than is involved in any or all of these objections, grows out of another point raised by the counsel of the appellant; which is, that the act itself, under which these proceedings have been had, does not apply to a case of this kind; that the statute has reference, or was intended to have reference, only to foreign wills, and not to wills made and executed within the state, by persons whose domicil was also within the state. As this objection, if well taken, is fatal to the decree not only, but to the power of the surrogate making it, I will examine it in the first place.

The words of the act are very broad and comprehensive. It is enacted, " That when any will shall have been admitted to probate in any state or territory of the United States, or in any foreign state or kingdom, and it shall become necessary or desirable for the executor or executors named in such will or codicil, or for any of the persons interested therein, to have such will proved and recorded in this state, it shall and may be lawful for any surrogate of any county in this state, upon application made to him for the purpose, and upon filing in his office an exemplified copy of such will, to make an order that cause be shown before him, at a certain time and place therein to be expressed, not less than thirty days nor more than six months from the time of making such order, why a duly certified copy of such will and codicil or codicils thereto, if any, should not be filed and recorded in the office of such surrogate, and letters testamentary thereupon be issued to such executor or executors as aforesaid, or letters of administration with the will annexed, as the case may require; which order shall be published in such manner as the surrogate making the same shall direct."

The words of the act, taken in their literal sense, will certainly include the will, a copy of which has been ordered by the

surrogate to be filed and recorded. They will embrace not only foreign wills, but those made and executed here, by residents of the state, and taken to another state and there proved. And it will follow as a matter of course, that all wills made in this state by persons who may happen to have any property in a sister state, may in the first place be taken and proved there, according to their state regulations, and that thereupon a certified copy may be brought here, and without any further proof filed and recorded. The statute embraces wills of lands as well as of chattels; and by the second and third sections of the act, the letters testamentary are to have the same force and effect, and the certified copies of such recorded wills shall be evidence in the same manner, and have the same force and effect, in all courts of law and equity, as they would have if such will or wills had been proved in the usual manner, under the existing laws of this state.

In construing a public statute, courts will be governed, in ordinary cases, by the plain meaning of the words made use of by the legislature. They are not to inquire into the policy or impolicy of the statute; but if there be nothing that ought, upon the sound rules of interpretation or construction, to vary the natural import of the words made use of, they are bound to carry it into effect.

It is true, nevertheless, that in the construction of statutes, where there are two or more *in pari materia*, all must be taken together. They must be looked upon as different parts of one system, and as having one general object in view. This is necessary to ascertain and effectuate the intention of the lawgiver, and to harmonize laws relating to the same subject. Upon the strength of this rule of construction, it is argued by the counsel of the appellant, that this act must be considered as having reference to foreign wills, and not wills made in this state by persons resident therein. The act of 1713—14, (*Rev. Laws*, 7,) directs the mode in which wills shall be executed so as to pass real estate in New-Jersey ; and it provides in the third and fourth sections, the mode in which wills made in any part of the kingdom of Great Britain and Ireland, or in any of the colonies, by

[Wallace v. Wallace.]

which lands were devised in this colony, may be received in evidence in any of our courts of judicature. They are to be certified, if made in Great Britain or Ireland, under the seal of the office where they are lodged; and if made in any of the colonies, they are to be proved according to the custom of said colony, and certified under its great seal; and in both cases the certified copies shall be esteemed as valid and sufficient as if the original will or testament were then and there produced and proved. This provision is very ample. It goes further than the act of congress, which has subsequently provided for the introduction of exemplified copies of records among the different states. By that act they are simply made evidence of the existence of such records; by ours, they are declared as valid as if the will itself was then and there produced and proved.

It will be perceived, however, that our act of 1713—14, makes no provision for filing or recording such foreign exemplifications; nor was the ordinary, or any one acting under him, authorized to grant letters testamentary. Hence arose a difficulty which has long been felt in our state. Foreign executors, having proved a testament abroad, were unable to collect such assets as might be within the state. They could make no conveyance of lands. Their authority to act was not recognized in our courts. And even those who came with letters testamentary from sister states, were not permitted to sue as such. Such, at least, I understand to have been the practice, though I am not aware of any judicial decision on the subject. To remedy the inconvenience, an act was passed in December, eighteen hundred and twenty-five, entitled, "An act relative to wills, administrations and guardianships granted without this state." That act authorized the ordinary, or any of the surrogates, to file and record copies of wills, &c., proved and recorded in any foreign kingdom or in any of the United States; and declared that the copy of the will thus recorded should have the same force and effect as if the will had been proved before the ordinary or any of the surrogates. It made no provision for the granting of letters testamentary, but authorized the executor to sue and to have the same privileges

[Wallace v. Wallace.]

*in courts* as if the will had been proved in this state.    The diffi-
culty was not removed.    The authority to sue gave the executor
no power to sell and convey personalty or land,  or to do other
acts which might be necessary in the execution of his trust.
The present act repealed that of eighteen hundred and twenty-
five, and is a substitute for it, and as we have already seen, it
authorizes the granting of letters testamentary, and gives them
the same force and effect as if the will had been proved by the
subscribing witnesses in the usual manner under the laws of this
state.

If it is considered that this act comes in aid of the original
act of 1713—14, the argument is a fair one that it was intend-
ed to apply only to the cases in which by that statute certified
copies were received as evidence ; that is to say, copies of wills
*made and* proved in foreign countries, or in the different states,
and not to wills made within our own state.    It can hardly be
supposed that the legislature would gravely enact a law that the
will of a man living and dying in this state—and which will was
made within the state—might be proved in Pennsylvania or New-
York, and then a certified copy be brought here for probate.
The practice of first proving our wills in other states, has never
yet obtained.    No inconvenience or difficulty had been experien-
ced from that source ; and I cannot believe that the legislature
ever intended to make provision for a case so anomalous.    All
that was necessary to complete the system of our statute regula-
tions respecting wills, was that some mode should be adopted
whereby the executors of foreign wills, regularly proved according
to the laws of the country where they were made, might exer-
cise their power under them in this state.    The argument de-
rived from this rule of construction is entitled to great considera-
tion.

Where the construction of a statute is doubtful, it is proper in
expounding it to take into consideration the consequences that
may result from it ; for it will never be presumed that the legis-
lature intended to pass an act that would lead to mischievous
results, or unsettle the general principles of the law.

[Wallace v. Wallace.]

Our act does not determine in what county a will shall be proved; but there can be no doubt that the county where the testator dies, if that was his domicil, is the proper county. And such has been the uniform practice, save only where wills are proved before the ordinary. As the law now stands, no will can be admitted to probate until the expiration of ten days from the death of the testator. Whether it be a will of lands or of personalty, or of both, all persons interested have a right to file a caveat against its being proved; and they know how and where this must be done to insure a fair hearing on the merits. The will may be contested before the orphans' court, and before this court by way of appeal. But if a literal and strict construction is given to this act, the will of a testator dying in the county of Bergen or Gloucester, may be taken to New-York or Philadelphia, and there proved without the knowledge of legatees or others interested, and then the executors or others interested may make application and have certified copies of them admitted to probate within this state. In such case, if the will were a will of personalty, where would be the opportunity of contesting it, or examining into the sanity of the testator? And even if it were a will of lands, the privilege of contestation in the civil law courts would be taken away. It is no answer to say, that cases of fraud or collusion might be inquired into. The difficulty would be, that whenever there were assets in New-York or Philadelphia, the executor would have a right, (if he chose to exercise it,) to have the will proved in either state as an original will. The probate courts there would have jurisdiction, and it would be no easy matter to fasten fraud upon an executor for doing what he was directly authorized to do by an act of the legislature. But again, the executor having the will proved in some sister state, say New-York, may take a certified copy of it to the surrogate of any county, and request that it may be filed and recorded. He may go to the surrogate of Warren or Cape May, and although the surrogate may give full notice to all parties interested, it is plain that any thing like contestation must be attended with great inconvenience and expense. And it appears

to me that the very fact that these letters testamentary may be granted by the surrogate of any county, goes far to show, that the act has reference to foreign wills only—to cases where the testator has no domicil within the state. We have seen that the uniform practice, in all cases where the testator has a domicil within the state, is to prove the will in the county within which the domicil is. It is only in cases where there is no domicil, that wills have been proved before the surrogate of any county; and it is doubted by some whether in such cases there is power any where except in the ordinary to grant letters testamentary or letters of administration in cases of intestacy.

I think it manifest that to construe this statute literally, would tend greatly to mar the system and harmony of our laws regulating the proof of wills, and might lead to consequences not easy to be foreseen. Yet I am aware that the principle of expounding statutes from their consequences, is to be exercised with great caution. That it is difficult of application, is no argument against its proper use. And I would adopt the language of the court in the case of the *United States* v. *Fisher,* 2 *Cranch,* 390 : " Where rights are infringed, where fundamental principles are overthrown, where the general system of the laws is departed from, the legislative intention must be expressed with irresistible clearness to induce a court of justice to suppose a design to effect such objects."

When we look at the consequences of a literal construction of the act, it may fairly be inferred that they were never within the intentions of the legislature. In giving a construction to this act, it may be useful to look at the laws of some of our sister states on the same subject.

In Massachusetts, an act was passed in seventeen hundred and eighty-five, for the filing and recording of wills proved without the government. The terms of the act are general, applying to the copy of any will that has been proved and allowed in any probate court in any of the United States, or in any foreign state or kingdom; and the provisions of this act are very similar to our own. In *Goodwin* v. *Jones,* 3 *Mass. Rep.* 521, chief justice

Parsons decided, that the administrator of a person dying in Connecticut, taking out letters of administration in that state, could not by virtue of them prosecute or defend an action in Massachusetts. In the opinion delivered in that case, the chief justice says, " We have no particular statute relating to foreign administrations; but the manner in which an executor of a will proved without the state may execute his trust within, is regulated by the statute of seventeen hundred and eighty-five"—which is the one just referred to. He then adds, " It would be inconsistent with the beneficent intent of the statute, to allow an administrator of an intestate, not an inhabitant or resident within the state at his death, an authority derived from a foreign administration, which he could not have under the foreign probate of a will, of which he was the executor." The learned judge appears to consider the case of foreign probates and foreign administrations as applying to non-residents—and argues, that as the one case is provided for by statute and the other not, a foreign administrator of a non-resident has no authority. So far as that dictum goes it is favorable to the exposition contended for by the counsel of the appellant.

In seventeen hundred and ninety, New-Hampshire passed an act on the same subject, but it is precisely a copy of that of Massachusetts, and I do not know that any construction has been given to it in their state courts.

In Connecticut, the statute relating to the proving of foreign wills, refers expressly to wills *made* and proved in a foreign country : 3 *Law Reg.* 71. Such is the case also in Delaware, Maryland, Illinois, Indiana, Missouri and Maine.

The states of New-York, Georgia, Tennessee and Louisiana, have no statute provisions on the subject. From this we see that in a majority of the states where the proving of foreign wills has been made a matter of statute regulation, the statutes have reference only to wills made as well as proved out of the state ; and I am led to believe that such was the construction intended to be given to the act of Massachusetts, of which ours is, as to the point in dispute, a copy.

[Combs v. Jolly.]

The question then arises, Are all these circumstances sufficient to authorize the court to give to the statute the construction contended for by the appellant? I think they are; and although I feel much hesitancy in going against the plain words of the act, yet taking it in connection with others on the same subject—looking at the difficulty intended to be remedied, and seeing the consequences that may result from a construction that I am satisfied was never intended by the legislature, and aided by the view taken of the same matter in other states, I feel it my duty to declare that the act can have no reference to a will executed in this state, by one who then and at the time of his death lived in the state, although the will may have been taken to a foreign state and proved there before a court having competent jurisdiction.

Let the decree of the surrogate be reversed and set aside.